**IT IS SO ORDERED.**

**Dated: 04:55 PM November 10 2009**

MARILYN SHEA-STONUM
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| IN RE: ) | CASE NO. 07-51884 |
| AKRON THERMAL, LIMITED ) PARTNERSHIP, ) | CHAPTER 11 |
| DEBTOR. ) | CHIEF JUDGE MARILYN SHEA-STONUM |
| AKRON THERMAL, LIMITED PARTNERSHIP, *et al.*, ) | |
| PLAINTIFF. ) | |
| vs. ) | ADVERSARY NO. 07-5130 |
| AKRON DEVELOPMENT CORPORATION, ) | |
| DEFENDANT. ) | |

1

This matter came before the Court on the motion of the defendant, Akron Development Corporation, for summary judgment on the Plaintiff-Debtor's complaint for turnover of property pursuant to 11 U.S.C. § 542(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference entered in this District on July 16, 1984.

Defendant ADC now moves for summary judgment on the ultimate issue of liability on the alleged deficiency.

## I. SUMMARY JUDGMENT STANDARD

The court shall grant a movant's motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); FED. R. BANKR. P. 7056. The party moving for summary judgment bears the initial burden of showing the court that there is an absence of a genuine dispute over any material fact. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), and, upon review, all facts and inferences must be viewed in the light most favorable to the nonmoving party. *Id.* at 285; *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991), *cert. denied*, 503 U.S. 939 (1992). However, the ultimate burden of demonstrating the existence of a genuine issue of material fact lies with the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-movant must "come

forward with 'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

## II. BACKGROUND

The parties in this case have filed Amended Joint Stipulations of Fact (Docket #70) in this case. The following factual matters are not in dispute:

1. The Akron Development Corporation (the "ADC") is a 501(c)(3) corporation registered with the Ohio Secretary of State in 1979 (Am. Stip. ¶4).

2. Its purpose is, among other things, to promote business development in the city of Akron, Ohio the (the "City") (Am. Stip. ¶4).

3. The ADC, together with the City, jointly administers the Akron Global Business Accelerator ("AGBA") program, formerly the Akron Industrial Incubator (the "Incubator") (Am. Stip. ¶5).

4. In 1993, the City purchased property located at 526 South Main Street, Akron, Ohio (the "Premises") in fee simple (Am. Stip. ¶6).

5. The City has since provided space in the Premises to the ADC, which has subleased to businesses affiliated with the Incubator/AGBA (Am. Stip. ¶8).

6. There are no written lease agreements concerning the Premises between the City, the ADC, or the Incubator/AGBA (Am. Stip. ¶9).

7. Akron Thermal Limited Partnership ("ATLP") provided steam to the Premises (Am. Stip. ¶10).

3

8. ATLP filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 18, 2007 (the "Petition Date").

9. There are no written agreements for steam service between ATLP and the City, the ADC, or the Incubator/AGBA (Am. Stip. ¶10).

10. ATLP operated from facilities it leased from the city of Akron, Ohio ("City") (Am. Stip. ¶2), as documented in the Operating Lease Agreement ("Lease") (Am. Stip. ¶3).

11. In 2005, the City notified ATLP that because ATLP was delinquent on its water and sewer bills payable to the Akron Public Utilities Bureau, the City would apply all current and future invoices from ATLP toward the delinquency (Am. Stip. ¶12).

12. Credits on ATLP's water and sewer account reflect amounts ATLP invoiced for steam supplied to the Premises (Am. Stip. ¶13-14).

13. Although the parties have not specifically stipulated that no payments were remitted to ATLP on these invoices following the City's notice, the pleadings do not allege that any payments were made.

14. The parties also apparently do not dispute that the City paid for steam service to the Premises prior to 2005 (Mtn. for S. J. § IV (Docket #77)), although ATLP notes that it drew the payment from an account that the City internally affiliated with the ADC (Memo. in Opp. ¶ 9 (Docket #79)).

15. Neither party has disputed that ATLP's total indebtedness to the City exceeds the amount invoiced for steam service supplied to the Premises between March 2005 and the Petition Date.

16. The Public Utilities Commission of Ohio ("PUCO") regulates public utilities in the State of Ohio and, to that end, promulgates tariffs that articulate the rules applicable to each utility service provider (Am. Stip. ¶11). The parties have stipulated to the language of the tariff applicable to ATLP (the "Tariff") (Am. Stip. ¶11, Exhibit A).

### III. DISCUSSION

The Tariff provides that "All Contracts for service shall be between ATLP and the Owner of the premises served. A tenant of the owner may cosign with the owner as guarantor of payment." § 100.2. This is the only provision in the Tariff providing for contractual service arrangements absent the PUCO's express written consent, which was apparently not obtained with respect to the payment arrangements for the Premises. The parties have stipulated that the City of Akron is the owner of the Premises. According to the Tariff, the City must therefore be a party to any contract for service.

The Tariff states that a written contract "may be required from each Customer before Service is commenced." § 100.1. "Customer" is circuitously defined as one contracting for service (§ 1), which, as the Tariff indicates in § 100.2, can only be done by a property owner or cosigning tenant. Therefore, only an owner or cosigning tenant may be a customer. The ADC is undisputedly neither owner nor cosignor.

Plaintiff cites two cases in support of the proposition that ADC may be liable on the account. Both are inapposite. The first is *East Ohio Gas Co. v. Kenmore Constr. Co.,*

5

*Inc.*, 2001 WL 302818 ("*Kenmore*"). In that case, the parties – not their tenants, affiliates, or partners – had a course of dealing in which they would resolve invoices between them annually. The court found that this course of dealing created an open account "based on this *agreement* … to retain their invoices and resolve them all at once." *Id.* at *5 (emphasis added). As the court stated:

> An action on an account is appropriate where the parties have conducted a series of transactions, for which a balance remains to be paid. Such action is founded on a *contract*, express or implied. To establish a contract implied in fact, a party must demonstrate that circumstances surrounding the parties' transactions make it reasonably certain that an agreement was intended.

*Id.* (citations omitted) (emphasis added). In this case, the applicable tariffs expressly provide that all contracts for service shall be with the property owner and facts sufficient to support the finding of a contract with the tenant, ADC, have not been alleged. *Kenmore* does not support the proposition that an obligation may arise between parties without evidence of a supporting contract, only that such a contract may be implied from a course of dealing where a writing is absent. Again, no such course of dealing was alleged or suggested on this undisputed record.

The other case cited by ATLP, *Strongsville Pipe Co. v. Dicesare*, 1993 WL 27491, dealt only with a debt incurred by the owner of a property, rather than a tenant. Furthermore, it did not involve any dispute over who was obligated to pay for utility service provided to the property. The property owner had received invoices from the utility and made partial payments on those invoices. *Id.* at *2. The property owner did not allege that some other party was responsible. Indeed, he did not apparently deny that he was the person obligated to pay for gas supplied to the property, but rather asserted he was required to pay "only the amount he thought was fair for the gas he thought he used."

6

*Id.* at *1. More importantly, because it was undisputed that the utility had complied with PUCO requirements, it did not raise the question of an agreement not contemplated in applicable tariffs.

ATLP relies on the Tariff language, "a written contract *may* be required," to support its proposition that no contract is required at all. The Tariff explicitly does not require a written contract. However, the law requires some sort of contract in order to impose liability; there can be no "account" in the absence of an agreement. The Tariff specifies that such contracts, whether written or not, shall be with the property owner.

Ohio case law leads this Court to conclude that, in the absence of a written contract, a tariff properly filed with the PUCO is essentially the service contract. In *Dayton Power & Light Co. v. Deagle-Anderson Dev., Inc.*, the court upheld a jury instruction stating as much, noting that "even if appellants had objected to the characterization [in the jury instruction] of the tariff as their contract they would not have prevailed on the issue." 1993 WL 333651 at *4 (Ohio App. 2 Dist.). In this sense, the parties were incorrect when they stipulated that there were no written agreements between the City and ATLP. In the absence of another agreement, the tariff is the written agreement between ATLP and its customers. This agreement provides that the customer is the property owner.

Even if not considered a contract per se, tariffs have "the force of law and all users of [the utility's] service are charged with notice thereof." Schmukler v. Ohio Bell Tel. Co., 116 N.E.2d 819, 825 (Ohio Com.Pl. 1953) (citing Erie R. Co. v. Steinberg, 113 N.E. 814) (Ohio 1916). ATLP, the ADC, and the City were therefore on notice that all contracts for service were between ATLP and the property owner, i.e., the City.

## IV. CONCLUSION

Based on the above discussion, it is unnecessary to address the parties' other arguments. The Defendant ADC is entitled to judgment in its favor as a matter of law and the Motion is hereby granted. An entry of judgment consistent with this Opinion will be entered separately in this case.

# # #